IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

-------------------------------------------------------x
                            :
RESOLUTE PARTNERS, LLC        :         3:12 CV 1291 (JBA)
                            :
                            :
v.                          :
                            :
BASECOM CONSTRUCTION, INC.   :       DATE: NOVEMBER 20, 2013
                            :
-------------------------------------------------------x

<u>RULING ON DEFENDANT'S MOTION FOR MODIFICATION OF INTERIM RULING
REGARDING STANDSTILL ORDER AND TO DEPOSIT FUNDS INTO COURT REGISTRY</u>

On September 5, 2013, defendant BaseCom Construction, Inc.[1] ["defendant" or "BaseCom"] filed the pending Motion for Modification of Interim Ruling Regarding Standstill Order and to Deposit Funds into Court Registry (Dkt. #107),[2] as to which plaintiff Resolute Partners, LLC ["plaintiff" or "Resolute"] filed a brief in opposition twenty-one days later.  (Dkt. #111). On October 8, 2013, defendant filed its reply brief.  (Dkt. #112).  Under the latest scheduling order, all discovery is to be completed by January 15, 2014, all dispositive motions are due by February 3, 2014, and if no dispositive motions are filed, the parties' Joint Trial Memorandum will be filed by March 1, 2014, with jury selection to be held on June 3, 2014. (Dkts. ##108-09).

---

[1]On September 27, 2012, the case caption was corrected to properly name as defendant BaseCom Construction, Inc.  (Dkts. ##19-20).

[2]Attached is the affidavit of Dennis Casey, CEO of BaseCom, sworn to August 21, 2013 ["Casey Aff't"], which are attached the following twenty-eight exhibits: copy of Memorandum of Understanding ["MOU"], dated April 14, 2011, between plaintiff and defendant (Exh. A); copies of letters between the parties, dated November 20 & December 20, 2012 and January 23, February 20, March 20, April 22, May 22, June 24, July 21, & August 21, 2013 (Exhs. B-C, G, J-K, O, R, U, X, BB); copies of e-mails between the parties, dated January 10, February 12, April 2, May 3, June 4, July 2, & September 20, 2013 (Exhs. D, H, L, P, S, V, Y); copies of Settlement Reports for October, November & December 2012, and for January, February, March, April, May & June 2013 (Exhs. E-F, I, M-N, Q, T, W, Z); and copy of Summary of MOU Payments Due from October 2012 through June 2013 (Exh. AA).

For the reasons stated below, defendant's Motion for Modification of Interim Ruling Regarding Standstill Order and to Deposit Funds into Court Registry (Dkt. #107) is <u>granted in part</u>.

I.  FACTUAL AND PROCEDURAL BACKGROUND

It is necessary to summarize, in some detail, the contorted procedural history behind this litigation.  On September 6, 2010, plaintiff commenced this action by Verified Complaint against defendant (Dkt. #1), followed by an Amended Complaint filed on September 27, 2012 (Dkt. #23), followed by a Second Amended Complaint filed on January 18, 2013.  (Dkt. #80).  The Second Amended Complaint alleges breach of confidentiality, non-compete, and non-solicitation agreement (Count One), tortious interference with contract (Count Two), tortious interference with business expectancy (Count Three), breach of the Memorandum of Understanding ["MOU"](Count Four); breach of the implied covenant of good faith and fair dealing (Count Five); declaratory judgment regarding the MOU (Count Six); declaratory judgment and injunctive relief regarding the bill of sale and the MOU (Count Seven); and violation of Connecticut Unfair Trade Practices Act, CONN. GEN. STAT. § 42-110b <u>et. seq.</u> ["CUTPA"](Count Seven).  On November 21, 2012, February 5, 2013, and February 19, 2013, defendant filed its Answers, Affirmative Defenses, and Counterclaims.  (Dkts. ##50, 94, 97; <u>see also</u> Dkt. #58).

On September 6, 2012, plaintiff also filed an <u>Ex Parte</u> Motion for Temporary Restraining Order ["TRO"], seeking to prevent BaseCom from accessing relevant sites in order to perform duties as a subcontractor of Resolute, or in the alternative, preventing BaseCom from terminating, diminishing or modifying service to Resolute's customers, and removing, altering, or changing certain equipment to which BaseCom has title but of which Resolute is the equitable owner.  (Dkt. #2; Dkt. #33, at 5, 7).  A Motion to Deposit Funds was also filed.

(Dkt. #3).

The next day, Judge Arterton held a telephonic status conference on plaintiff's Motion for TRO (Dkts. ##30, 33); the conference was held with plaintiff's counsel and Dennis Casey, BaseCom's CEO, and Jeffrey Casey, BaseCom's COO, who appeared pro se on behalf of defendant.  (Dkt. #33, at 2).  On September 10, 2012, Judge Arterton denied plaintiff's Motion for TRO as moot in light of the parties' consent to the September 7, 2012 Stipulated Standstill Order (Dkt. #9)["Standstill Order"], and plaintiff's Motion to Deposit Funds was granted in the amount of $55,384.72, "representing the disputed July 2012 payment to [d]efendant Base[C]om, and [plaintiff] shall deliver a like sum to the Clerk for deposit on September 20, 2012." (Dkt. #10).

On September 11, 2012, this case was referred to this Magistrate Judge (Dkt. #11), and eight days later, plaintiff filed an unopposed Emergency Motion to Modify the Order on the Motion to Deposit Funds (Dkt. #12), which was granted to reflect a deposit amount of $45,992.93, without prejudice to defendant's right to later contest this calculation.  (Dkt. #13).  On September 27, 2012, this Magistrate Judge held a lengthy telephonic status conference in order to schedule the anticipated evidentiary hearing.  (Dkts. ##14, 21).  At the request of counsel during the September 27 conference, a continued telephonic status conference was held on October 9, 2012 (Dkts. ##22, 28), during which counsel reported their interest in pursuing mediation before a highly respected retired federal judge, which mediation later proved unsuccessful.

On October 26, 2012, immediately after the unsuccessful mediation, defendant filed its Motion for Expedited Hearing, with brief in support (Dkt. #36), followed five days later by a Motion for Release of Deposited Funds (Dkt. #38), and a Motion for Proposed Order Regarding Motion for Release of Deposited Funds (Dkt. #40).  These motions also were

3

referred to this Magistrate Judge.  (Dkt. #42).  Also on October 31, 2012, plaintiff filed an "initial" brief in opposition to defendant's Motion to Expedite contesting the "urgency" of defendant's motion and reserving its substantive response to the brief it intended to file within the twenty-one days provided by the governing rules.  (Dkt. #37).

A third telephonic status conference call was held on November 9, 2012, during which counsel agreed that the evidentiary hearing on plaintiff's Ex Parte Motion for TRO, now converted into a Motion for Preliminary Injunction, would be held on November 27-28, 2012, with November 29, 2012 as a possible back-up day,[3] and the deadlines for plaintiff to respond to defendant's three pending motions would be "held in abeyance, pending further Court order or agreement of counsel." (Dkts. ##41, 44-45).   In accordance with deadlines set by the Magistrate Judge, plaintiff disclosed its witness list and exhibits on November 16, 2012, and defendant disclosed its witness list and most of its exhibits four days later; there were a total of nine witnesses, seven of whom were to be considered as jointly designated witnesses.   (Dkts. ##44, 46, 48).  On November 20, 2012, defendant filed its objection to plaintiff's motion. (Dkt. #49).

The evidentiary hearing was held on Tuesday-Wednesday, November 27-28, 2012, but proceeded at a slower pace than anticipated by counsel and the Court, with completion of the testimony of only two witnesses and the direct examination of a third.  (See Dkt.

---

[3]All counsel were hopeful that the hearing would be completed within two days, but that estimate grossly under-estimated the time that would be required.

When the parties appeared before Judge Arterton on September 7, 2012, plaintiff's counsel estimated that he would present two to three witnesses, for "about probably a day's worth of testimony.  So, I would think with testimony and argument done efficiently, maybe two days." (Dkt. #33, at 21).  Judge Arterton clairvoyantly advised that "obviously if all the disputes between the parties are going to be at issue, we're not going to be able to do a hearing in the next month or so."  (Id. at 25).

##44-45, 51, 53, 96).  Defendant's principals were not available for the third day, on Thursday, November 29, 2012, despite the fact that counsel were aware the Court had held that date open as a back-up date.  The Magistrate Judge then offered five open days in December 2012 for continuation of the evidentiary hearing, but those days, unfortunately, were not convenient for counsel and/or the parties.

At the close of the evidence on November 28, 2012, defense counsel argued that given the passage of time since the Standstill Order was entered, and the postponement of the evidentiary hearing until January 2013, at the earliest, with the resultant delay in issuing a ruling on plaintiff's pending motion, BaseCom had been prejudiced and remained "unprotected," particularly with respect to payments that should have been made by Resolute to BaseCom under the MOU on October 20, November 20, and December 20, 2012, as well as on January 20, 2013, and hence he requested a "speedy hearing" on the issue of the Standstill Order.[4]  Plaintiff argued that defendant was the party that canceled the third day of hearing for November 29, that an orderly process had been set during the November 9, 2012 telephonic conference to resolve defendant's pending motions regarding the Standstill Order, and that defendant's attempts were another attempt at "ambush" by defense counsel during these proceedings.

Two days later, this Magistrate Judge filed her Interim Ruling Regarding Standstill Order (Dkt. #56)["Interim Ruling"], which ordered plaintiff to place into the Court registry any potential payments for the month of September 2012 and the first four days of October 2012, payable in two installments, and "without prejudice[] to any contrary conclusion being reached after full briefing on defendant's three pending motions."  (Id. at 6-7).

---

[4]This request obviously was contrary to the process that already had been ordered by the Court.

5

A telephonic status conference was held before this Magistrate Judge on December 5, 2012.  (Dkt. #60).  The next day, this Magistrate Judge filed an Order Regarding Scheduling (Dkt. #62), which recounted counsel's failure to report back to the Magistrate Judge regarding "the seemingly simple task of selecting among the multiple days the Magistrate Judge had offered to counsel in January 2013." (At 1).  Following responses from counsel (Dkts. ##63-64), on December 10, 2012, this Magistrate Judge filed a Scheduling Order (Dkt. #69) that the continued evidentiary hearing would be held on February 6-7, 2013 and would be continued on February 13-15, "only if necessary[,]" and "unless otherwise agreed to by counsel in writing[.]" (emphasis omitted).

New counsel appeared for defendant on December 12, 2012.  (Dkt. #70).  With the introduction of new counsel, on January 30, 2013, the parties filed a Joint Motion to Modify Scheduling order and Cancel Scheduled Hearing (Dkt. #82), which was granted by this Magistrate Judge that day.  (Dkt. #83; see also Dkts. ##84, 87-89, 91, 99-100).  Due to the massive amount of documents produced in this case (more than 20,000 documents produced by plaintiff and more than 10,000 documents produced by defendant), the deadlines for the completion of discovery and dispositive motions have been postponed several times.  (See, e.g., Dkts. ##101-02, 105, 108-09; see also Dkts. ##114-15).

## II. DISCUSSION

In its brief, BaseCom argues that the MOU "is not a simple contract," but rather one in which BaseCom's "'front end' contributions of financing and labor" in the amount of "approximately $625,000" "entitle[s] it to a percentage of revenues during the entire course of the [four-year] contract[,]" so that of the "generated average 'Net Revenues' to Resolute in excess of approximately $180,000 per month since inception," BaseCom is entitled to "approximately $50,000 per month pursuant to the MOU." (Dkt. #107, at 2-3).  As explained

by defendant, under the MOU, on the twentieth day of each month, Resolute was to prepare a settlement report and payments for the previous month, and the contractual remedy for non-payment was a fifteen-day cure period, followed by interruption in service.  (Id. at 4 & n. 2).

This lawsuit was triggered by defendant's notice to plaintiff demanding payment for services provided in July 2012, and reserving its right to interrupt services; as previously indicated, as part of the Standstill Order, as modified, plaintiff paid into the Court Registry $101,377.65, representing $55,383.72 due for July 2012 and $45,992.93 for August 2012. (Id. at 4-5 & n. 3, 7-8; see also Dkts. ##10, 12-13).  Pursuant to the Interim Order, plaintiff has made two payments of $28,80.92 into the Court Registry for the services provided in September 2012 and the first four days of October 2012, for a total of $159,139.49.  (Dkt. #107, at 5, 8-9; see also Dkt. #56).  In its brief, defendant asserts that pursuant to the Standstill Order, "BaseCom has continued to allow uninterrupted use of its equipment and services to the military personnel, while Resolute has continued to breach the terms of the MOU by failing to pay BaseCom[,]" which at the time of the motion and brief was a ten-month period from October 4, 2012 to July 31, 2013, in the amount of $452,671.04.  (Dkt. #107, at 5-6 & nn.4-5, 9-10; Casey Aff't ¶¶ 9-53; Exhs. B-BB).  Defendant further seeks an additional $49,652.54 per month for each month, commencing with August 2013.  (Dkt. #107, at 10; Casey Aff't ¶¶ 52, 54).

Defendant argues that "[f]undamental fairness supports a modification" of the Standstill Order and Interim Ruling, given the "unexpected amount of time [that] has passed" since the two orders were entered, "resulting in [more than] ten months of uninterrupted services provided by BaseCom without payment."  (Dkt. #107, at 10-14).

In its brief in opposition, plaintiff argues that defendant's motion "is flawed in many

7

respects, . . . [and] suffers from several over-arching fatal defects[,]" the first of which is that BaseCom previously had made nearly identical arguments but then "voluntarily withdrew those [arguments] pursuant to an agreement of the parties that was aimed at moving forward to ultimate resolution of the merits of the case, rather than spending the resources of the parties and the Court embroiled in protracted preliminary proceedings." (Dkt. #111, at 1, 6-8, 10-11).

Second, plaintiff argues that there have been no change of circumstances other than "the passage of time[,]" so that there has been no change in the status quo since January 2013; plaintiff further refutes that the Interim Ruling contemplated a continuation of the evidentiary hearing on plaintiff's Motion for Preliminary Injunction. (Id. at 2, 9-12). Plaintiff further discounts that the Casey Affidavit and the Settlement Reports are "new" evidence, in that they are "accounting documents that provide the results of certain numerical calculations[,]" but plaintiff continues to assert that the MOU has been terminated. (Id. at 12-13 & nn. 6-7).

And last, plaintiff argues that defendant's motion "seeks relief based on the assumed truth of facts that are very much in dispute, and then in essence demands a preliminary mandatory injunction ordering the payment of compensatory contract damages." (Id. at 2, 14-17 & nn. 8-9)(emphasis omitted).

In its reply brief, BaseCom objects to plaintiff's "smear" of an "over-arching fatal defect" in that the previous motions were all withdrawn "without prejudice to refiling same . . ." and the Interim Ruling expressly provided that the order was "of course, without prejudice, to any contrary conclusion being reached after fulling briefing on defendant's three pending motions." (Dkt. #112, at 2). Defendant again asserts that the status quo has changed since the Interim Ruling, observing that "[n]ot only has the passage of time deprived

BaseCom of funds earned pursuant to the MOU, but Resolute has been able to use the funds withheld from BaseCom to pursue the present unfounded lawsuit[,]" and that during the preliminary injunction hearing, the Court contemplated a recommended ruling by early 2013. (Id. at 3-6  & n. 1).[5]  In addition, defendant argues that it is not seeking a mandatory injunction but rather a modification of the Interim Ruling, that the "undisputed facts" support BaseCom's position, that the MOU is still in effect and has not been unilaterally terminated by Resolute, that requiring plaintiff to pay into the Court Registry would not be "atypical[,]" and that the Settlement Reports are "admissions" of the continuing force of the MOU and liquidated monies due to BaseCom.  (Id. at 6-10).

As both parties have recognized, the standards for when a preliminary injunction may be modified were addressed in some detail nearly thirty years ago in Sierra Club v. United States Army Corps of Eng'rs, 732 F.2d 253 (2d Cir. 1984), with respect to a district judge's refusal to modify an injunction that had halted the construction of the Westway, an ambitious "proposed West-side super highway" that was later replaced by the more modest West Side Highway.  Id. at 254-56.  As the Second Circuit explained, "[a] preliminary injunction is issued to maintain the status quo until there can be a hearing on the merits[,]" whereas "[a] final or permanent injunction is granted only after a hearing on the merits[.]"  Id. at 256 (multiple citations omitted).  A final or permanent injunction "may not be changed in the interest of the defendants if the purposes of the litigation as incorporated in the decree have not been fully achieved[,]" id., citing United States v. United Shoe Machinery Corp., 391 U.S. 244, 248 (1968), and can only be modified  "where conditions have so charged as to make such relief equitable, i.e., a significant change in the law or facts[,]" especially when "rights [have been]

---

[5]Defendant also points out that plaintiff has failed to file "any counter affidavit" disputing Casey.  (Id. at 6).

fully accrued or facts are so nearly permanent as to be substantially impervious to change." Id., citing United States v. Swift & Co., 286 U.S. 106, 114 (1932); see also id. at 257.

In contrast, "[w]hen modifying a preliminary injunction, a court is charged with the exercise of the same discretion it exercised in granting or denying injunctive relief in the first place." Id. at 256.  As the Second Circuit observed: "An injunction is an ambulatory remedy that marches along according to the nature of the proceeding.  It is executory and subject to adaption as events may shape the need. . . ."  Id.[6]

Eleven years after the Sierra Club case was decided, a "Standstill Stipulation" was at issue in Museum Boutique Intercontinental, Ltd. v. Picasso, 880 F. Supp. 153 (S.D.N.Y. 1995), a copyright infringement action brought by plaintiff, a licensor of artistic designs from images created by the late Pablo Picasso against the deceased artist's children and grandchildren, and against a "French organization engaged in the business of protecting the intellectual property rights of individual artists on a worldwide basis."  Id. at 155-56, 159-60.  In mid-September 1993, less than one month after the lawsuit had been filed in state court in late August 1993, the parties entered into a Standstill Stipulation in lieu of plaintiff proceeding with its motion for preliminary injunction, which governed how the parties would continue to transact business with one another, adhering to the status quo, while they attempted to settle the dispute; in October 1994, more than one year later, plaintiff alleged that defendants had violated the Standstill Stipulation, at which point settlement discussions terminated.  Id. at 155, 160.  The next month, in November 1994, defendants filed a motion to vacate the Standstill Stipulation, plaintiff filed a motion for a finding that defendants had

_____

[6]U.S. District Judge Stefan R. Underhill made the same distinctions several months ago in Biediger v. Quinnipiac Univ., 928 F. Supp. 2d 414, 433-34 (D. Conn. 2013), regarding defendant's request to lift a permanent injunction imposed after a bench trial.

violated the stipulation, and both sides filed motions for preliminary injunction.  Id.

U.S. District Judge Shira Scheindlin found that the Standstill Stipulation was "most akin to a formal preliminary injunction decree maintaining the status quo and both parties' counsel agree that the Standstill [Stipulation] substituted for a preliminary injunction."  Id. at 160.  Relying upon Sierra Club, Judge Scheindlin held that "a district court may modify or vacate a preliminary injunction when, based on principles of equity, the modification is necessary to preserve the status quo."  Id. at 161, citing Sierra Club, 732 F.2d at 257 (footnote omitted).  The French organization argued that there had been "a substantial departure from the status quo" in effect when the Standstill Stipulation was signed in September 1993 in that plaintiff earlier had six or seven license agreements to reproduce no more than thirty images for approximately twelve "high-end" products, like porcelain trays, silk scarves, and handkerchiefs, but in the intervening year plaintiff had entered more than fifty licenses to reproduce its Picasso images on "low end" products like men's underwear and baby bibs.  Id.  In addition, in June 1994, plaintiff acquired rights to an additional 173 images.  Id.   Judge Scheindlin agreed that "the present circumstances are significantly different than those which existed when the Standstill [Stipulation] was signed in September, 1993."  Id.   She observed that the Standstill Stipulation "was not meant as a long term solution to the parties' multi-year disagreements over copyright, contract, trademark, droit moral, and pre-approval issues[,]"[7] and while the Standstill Stipulation

> [did] not contemplate that the parties [would] cease competing and seeking new business opportunities[,] . . . this [did] not change the fact that the Standstill [Stipulation], as a short term stopgap, was not intended to govern

---

[7]As Judge Scheindlin explained, droit moral is French for "moral right," and "is generally summarized as including the right of an artist to have his work attributed to him in the form in which he created it to prevent mutilation or deformation of the work."  Id. at 157, n.3 (citation omitted).

indefinitely the future relations of the parties or adjudicate their rights with respect to the Picasso images.

Id. at 161, 162-63.   In light of these significant changes, while the district judge "decline[d] to adjudicate fully the underlying contract right at [that] time," she held that "it [was] very clear at the least that the Standstill [Stipulation] ha[d] outlived its usefulness given that pre-approval and droit moral issues ha[d] brought the parties to loggerheads." Id. at 163.   She therefore vacated the Standstill Stipulation in that "the status quo ha[d] changed since September, 1993 and . . . the Standstill [Stipulation] was not meant to govern the activities of the parties for a lengthy period of time. . . ." Id.   In exercising "its equitable powers," the Court issued in its place a pre-approval process that was similar to one in a prior agreement between the parties, and the purpose of the new order was "to enable the parties to coexist until the merits of the case can be resolved after expedited discovery and trial[,]" scheduled for four months from the date of its ruling. Id. at 163 (footnote omitted), 167.[8]

Judge Scheindlin's analysis in Museum Boutique rings true here. The Standstill Order, negotiated before Judge Arterton, was meant to maintain the status quo pending a ruling on plaintiff's Motion for Preliminary Injunction before this Magistrate Judge. The Interim Ruling, as the title itself suggests, was a continued holding pattern until the evidentiary hearing was to be resumed in January 2013. As quoted by defendant in its reply brief, this Magistrate Judge indicated that the MOU was "[o]bviously . . . a four-year contract, starting in April 2011[,]" but she had "no interest in the plaintiff's ability to pay for the next four years through April of 2015. However, [the Magistrate Judge] do[es] have interest in the plaintiff's ability to pay in the next four months, which [she] would take as the outside date when a

---

[8]Judge Scheindlin also denied the cross-motions for preliminary injunction. Id. at 163-67.

ruling would be issued. . . . " (Dkt. #112, at 4-5).[9]  Moreover, the Interim Ruling explicitly provided that the ruling was "of course, without prejudice, to any contrary conclusion being reached after full briefing on defendant's three pending motions." (Dkt. #56, at 7)(emphasis in original).

The change in circumstances here is not as severe as that presented in Museum Boutique.  880 F. Supp. 2d at 161.  As plaintiff correctly points out, the only significant change is the passage of time, that is one year during which more than 30,000 documents have been exchanged by the parties in discovery.  In light of the oppressive number of documents produced in discovery, the parties jointly sought and obtained an extension of time for the completion of discovery until January 15, 2014, less than two months from now, with jury selection tentatively scheduled for June 3, 2014 if there are no dispositive motions filed.  (See Dkts. ##108-09).

However, many of Judge Scheindlin's observations are equally applicable here, in that the Standstill Order and Interim Ruling "[were] not meant as a long term solution to the parties' multi-year disagreements," were put in place as "a short term stopgap [and were] not intended to govern indefinitely the future relations of the parties or adjudicate their rights[,]" "[were] not meant to govern the activities of the parties for a lengthy period of time[,]" and have "outlived [their] usefulness."  Id. at 161, 163.  Under the present scheduling order, trial is not scheduled for at least another six months and perhaps longer if summary judgment motions are filled.  Defendant is correct that it has been prejudiced by the delay here, in light of plaintiff's continued use of defendant's equipment for which defendant has received no compensation; it well may be the case that plaintiff had every

---

[9]The transcript from the evidentiary hearing has not been filed on CM/ECF, so that Court presumes that the Magistrate Judge has been correctly quoted by defendant.

13

right to terminate the MOU on October 4, 2012, but that has not been adjudicated yet.  As in Museum Boutique,  in exercising "its equitable powers," the Magistrate Judge issues a new order, the purpose of which is "to enable the parties to coexist until the merits of the case can be resolved after . . .  discovery and trial[,]" id. at 163 (footnote omitted), scheduled in approximately six months, at the earliest.  Rather than the full amounts sought, which range from a low of $28,724.45 in December 2012 to a high of $51,453.65 in June 2013 (see Dkt. #107, Exhs. D-F, H-I, L-N, P-Q, S-T, V-W, Y-AA), plaintiff shall pay into the Court Registry fifty percent (50%) of these payments until judgment is entered.[10]  As the Interim Ruling indicates, Resolute had testified that it cannot continue to pay BaseCom's share into the Court Registry on a monthly basis because it "has hired a substitute contractor as 'cover' for defendant," (Dkt. #56, at 6), and the Court fully recognizes that a payment in excess of $200,000 may not have been anticipated by plaintiff.  As a result, **unless the parties agree otherwise in writing,** plaintiff shall begin its monthly payments ordered by this Ruling on the twentieth day of each month, commencing on **January 21, 2014**.[11]

## III. CONCLUSION

Accordingly, for the reasons stated above, defendant's Motion for Modification of Interim Ruling Regarding Standstill Order and to Deposit Funds into Court Registry (Dkt. #107) is granted in part to the extent set forth above.[12]

---

[10]If the parties are unable to agree about the amount of July 2013 payment (which was estimated by defendant) and the subsequent monthly amounts, they may seek further guidance from the Court **on or before December 13, 2013**.

[11]January 20, 2014 is Martin Luther King Day, a federal holiday on which the federal courts are closed.

[12]If counsel agree that a continued settlement conference before this Magistrate Judge would be productive, they should contact Chambers accordingly, or they may choose to return to

     <u>See</u> 28 U.S.C. § 636(b)**(written objections to ruling must be filed within fourteen calendar days after service of same);** FED. R. CIV. P. 6(a), 6(e) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; <u>Small v. Secretary, H&HS</u>, 892 F.2d. 15, 16 (2d Cir. 1989)**(failure to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).**

     Dated at New Haven, Connecticut, this 20th day of November, 2013.


                       <u>/s/ Joan G. Margolis, USMJ</u>
                       Joan Glazer Margolis
                       United States Magistrate Judge

---

the private mediator, if he is available to meet with them.